J-S53007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| HAROLD WILSON, | |
| Appellant | No. 3027 EDA 2016 |

Appeal from the PCRA Order Entered August 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0001224-2007
CP-51-CR-0001285-2007

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 20, 2017**

Appellant, Harold Wilson, appeals *pro se* from the August 12, 2016 order dismissing his first, timely petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

We need not provide a detailed summary of the facts of Appellant's case.  We only note that he and a cohort, Darnell Yarborough, robbed and beat one victim, Rasheed Jackson.  Five days later, Appellant and Yarborough shot and killed a second victim, Lionel Brewer.[1]  For these offenses, Appellant was arrested and charged with third-degree murder, and two counts each of robbery, criminal conspiracy to commit robbery, and

---

[1] For a thorough summary of the facts of Appellant's case, **see** Trial Court Opinion, 7/30/09, at 1-3, 4-6.

possessing an instrument of crime. He and Yarborough, as co-defendants, proceeded to a jury trial in January of 2008. At the conclusion thereof, Appellant was convicted of the above-stated offenses.[2] On March 28, 2008, Appellant was sentenced to an aggregate term of 32 to 64 years' incarceration. He timely appealed, and after this Court affirmed his judgment of sentence, our Supreme Court denied his subsequent petition for allowance of appeal. *Commonwealth v. Wilson*, 998 A.2d 1014 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 8 A.3d 346 (Pa. 2010).

On May 25, 2011, Appellant filed a timely, *pro se* PCRA petition. Counsel was appointed on January 23, 2012. Despite being represented by counsel, Appellant filed a *pro se*, amended petition on May 7, 2012. For some unexplained reason, it was not until June 27, 2016, that Appellant's counsel filed a petition to withdraw from the case. On July 8, 2016, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition. Appellant filed a timely, *pro se* response, but his petition was ultimately dismissed on August 12, 2016. That same order granted Appellant's counsel's petition to withdraw.

Appellant filed a timely, *pro se* notice of appeal. The PCRA court did not direct him to file a Pa.R.A.P. 1925(b) statement, but the court issued an

---

[2] Yarborough was also convicted of the offenses with which he was charged.

opinion addressing the issues raised in his petition.  Herein, Appellant raises the following four issues for our review:

> 1. Whether the [PCRA] court[] erred by denying [Appellant's] PCRA petition alleging that counsel was ineffective, when counsel improperly advised [Appellant] not to testify on his own behalf[,] disregarding the fact that he was presenting an alibi witness[?]
>
> 2. Whether the [PCRA] court[] erred by denying the PCRA petition alleging that counsel was ineffective for failing to conduct an independent investigation and call upon a witness or potential suspect[?]  Counsel failed to conduct a pre-trial investigation.
>
> 3. Whether the [PCRA] court erred by denying [Appellant's] PCRA [petition] alleging that trial counsel was ineffective for failing to protect his client from governmental interference, due to the judges [*sic*] [j]udicial [i]mpropriety and constant prejudicial bias[?]
>
> 4. Did the [PCRA] court[] err by denying [Appellant's] PCRA [petition] alleging that counsel was ineffective for failing to request a cautionary instruction regarding the weight to be given to the testimony of the prosecutors [*sic*] key witness['s] testimony?

Appellant's Brief at 7.

Preliminarily, we note that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)).  Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [*Commonwealth v.*] *Colavita,* 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing *Strickland*[ *v. Washington*, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. *See* [*Commonwealth v.*] *Pierce,* [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali,* 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Simpson,* [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *See Ali, supra*. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Colavita,* 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King,* 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" *Ali,* 608 Pa. at 86–87, 10 A.3d at 291 (quoting *Commonwealth v. Collins,* 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052)).

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014).

In Appellant's first issue, he argues that his trial counsel acted ineffectively by improperly advising him that if he testified on his own behalf, "his prior offenses would be brought into court."  Appellant's Brief at 11.  While Appellant does not specify what prior conviction(s) he has, he claims that "none ... were *crimen falsi*" and, therefore, they would not have been admissible as impeachment evidence had he chosen to testify on his own behalf.  Appellant's Brief at 20; *see also* Pa.R.E. 609(a) ("For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement."); *see also Commonwealth v. Moser*, 999 A.2d 602, 607 (Pa. Super. 2010) ("Crimes involving dishonesty or false statement [are] commonly referred to as *crimen falsi* crimes.").  Accordingly, Appellant argues that his trial counsel's advice not to testify was "so unreasonable as to vitiate a knowing and intelligent decision by [Appellant] not to testify on his own behalf…."  Appellant's Brief at 21; *see also  Commonwealth v. Miller*, 987 A.2d 638, 660 (Pa. 2009) (citations omitted) (declaring that "[c]laims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an accused's right to testify require a defendant to prove either that 'counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf") (citations omitted).

Appellant's argument is unconvincing for several reasons. First, even if we accepted Appellant's bald assertion that trial counsel advised him not to take the stand because his prior conviction(s) might be revealed, Appellant has not demonstrated that counsel acted unreasonably in that regard. As stated *supra*, Appellant does not specify **what** prior conviction(s) he has; instead, he merely states that they were not for *crimen falsi* crimes. Without Appellant's providing any details about conviction(s), we simply cannot accept his unverified statement that he has not committed any *crimen falsi* offenses that could have come to light had he taken the stand at trial.[3] Consequently, even if counsel did advise Appellant not to testify for this reason, Appellant has not demonstrated that such advice was unreasonable.

Furthermore, Appellant has also failed to prove that his underlying claim has arguable merit, as the record demonstrates that Appellant chose not to take the stand for a **different** reason than that which he asserts herein. Specifically, during the colloquy on Appellant's decision to waive his right to testify, Appellant initially stated that he had not yet decided whether to testify. **See** N.T. Trial, 1/22/08, at 39. Appellant confirmed that his indecision was "based on the fact that [his] alibi witnesses [were] not

_____

[3] We also point out that Appellant did not provide any specifics about his prior conviction(s) in his amended PCRA petition, in which he first raised this ineffectiveness claim. **See** Amended PCRA Petition, 5/07/12, at 1-6.

presently in the courtroom…[.]" *Id.* Appellant indicated that he would make a final decision "once [he knew] the availability of [his alibi] witnesses…[.]" *Id.* Then, during a short recess in the proceedings, one of Appellant's alibi witnesses arrived to testify. *Id.* at 41. Accordingly, the court again asked Appellant if he wished to testify on his own behalf, and he confirmed that, because his alibi witness had arrived, he did not want to testify. *Id.*

This record supports the PCRA court's conclusion "that [Appellant's] decision of whether or not to testify on his own behalf [was] based upon the availability of his alibi witnesses." *Id.* (citing N.T. Trial, 1/22/08, at 38-42). Nothing in the colloquy suggests, in any way, that Appellant's decision not to testify rested on trial counsel's advice about his prior conviction(s) being revealed.[4] Therefore, Appellant's first ineffectiveness claim fails on this basis, as well.

_____

[4] Moreover, Appellant did not attach to his PCRA petition any affidavit from his trial counsel (nor explain why one could not be obtained) to demonstrate that counsel advised him not to take the stand because of his prior conviction(s). *See Commonwealth v. Roney*, 79 A.3d 595, 606-07 (Pa. 2013) (noting that, in arguing trial counsel's ineffectiveness for not fully investigating his case, the appellant had failed to include an affidavit from counsel about what his investigation entailed, nor offer any explanation for the absence of that affidavit) (citing *Commonwealth v. Marshall*, 812 A.2d 539, 548 (Pa. 2002) (concluding that the appellant had failed to establish the reasonable basis prong of his ineffectiveness claim because, *inter alia*, he did not proffer affidavits from his trial counsel concerning the underlying claim of error, and did not provide an explanation as to why such affidavits could not be procured)).

In his second issue, Appellant argues that trial counsel acted ineffecitvely by "fail[ing] to investigate a potential witness/suspect[,] … []Lamar 'Marbles' Palmer[]." Appellant's Brief at 22. According to Appellant, his co-defendant, Yarborough, told police that Palmer was "the one who set up the robbery of the deceased," yet Appellant's trial counsel never investigated Palmer, nor subpoenaed him to testify. *Id.* at 23. Appellant argues that Palmer's testimony inculpating himself in Brewer's murder would have exonerated Appellant.

Our Supreme Court has declared that,

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the **Strickland** test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012) (internal citations omitted).

Here, Appellant has not demonstrated that Palmer would have been willing to testify on his behalf. Appellant concedes that Palmer "would have had to testify to the facts of his involvement in this case." Appellant's Brief at 24 (emphasis added). In other words, for Palmer to exonerate Appellant, he would have had to incriminate himself. Appellant offers no explanation of *why* Palmer would have been willing to do this for Appellant. Appellant's Brief at 24. Without any explanation by Appellant in this regard - let alone

an affidavit from Palmer stating that he would have been available and willing to testify - Appellant has not satisfied the requirements of proving that his trial counsel acted ineffectively by not calling Palmer to the stand.

Next, Appellant avers that his trial counsel was ineffective "for fail[ing] to protect [Appellant] from governmental interference." Appellant's Brief at 28 (unnecessary emphasis and capitalization omitted). Appellant essentially complains that during trial, the court questioned witnesses and made comments that indicated the court was biased in favor of the Commonwealth. Appellant also claims that the court allowed the prosecutor to make prejudicial remarks in front of the jury.

Throughout his argument, Appellant repeatedly recognizes that his trial counsel objected to remarks by the court and the Commonwealth and several times requested a mistrial. *See* Appellant's Brief at 29, 30. In light of trial counsel's objections, we fail to see how counsel acted ineffectively. Additionally, Appellant only baldly states that his appellate "[c]ounsel was [i]neffective for failing to preserve and raise this issue on [d]irect [a]ppeal." *Id.* at 32. He offers no discussion of this claim.

Appellant also fails to acknowledge that his appellate attorney **did challenge** the trial court's denial of defense counsel's motion for a mistrial, which was made during the prosecutor's closing argument. **See Commonwealth v. Wilson**, No. 2498 EDA 2008, unpublished memorandum at 9-12 (Pa. Super. filed April 20, 2010). This Court rejected that claim, concluding that the prosecutor's remarks "were made in response

- 9 -

to the evidence presented and defense counsel's comments, and did not rise to the level necessary to fix bias and hostility in the jurors' minds and require a new trial." *Id.* at 11-12. Appellant cannot now attempt to re-litigate this issue, or tack on additional claims of prosecutorial misconduct and/or court error under the undeveloped guise of trial/appellate counsel's ineffectiveness. *See* 42 Pa.C.S. §§ 9543, 9544 (precluding post-conviction relief for issues that were previously litigated before "the highest appellate court in which the petitioner could have had review as a matter of right"); *see also Commonwealth v. D'Amato*, 856 A.2d 806, 812 (Pa. 2004) (stating that to obtain relief on an ineffectiveness claim, the "petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard as set forth in … *Pierce*…."). Therefore, Appellant's third issue is meritless.

Lastly, Appellant argues that his trial counsel was ineffective in handling the testimony of one of Appellant's victims, Rasheed Jackson. Specifically, during the Commonwealth's direct-examination of Jackson, he was questioned about his prior conviction for false identification, and he admitted that he was on probation for committing that offense. Appellant now presents an extremely confusing argument in which he appears to first allege that it was prosecutorial misconduct for the Commonwealth to present Jackson's testimony. Appellant seemingly believes that, because Jackson had a prior *crimen falsi* conviction, the entirety of his testimony necessarily

constituted "false or misleading evidence" that the Commonwealth "fraudulent[ly]" presented. Appellant's Brief at 37.

Aside from the lack of merit on the face of this claim, Appellant's assertion of prosecutorial misconduct could have been raised on direct appeal, but it was not; consequently, it is waived. *See* 42 Pa.C.S. §§ 9543, 9544 (directing that PCRA relief may not be provided where a claim is waived because "the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding").

Appellant also contends that it was his counsel's obligation "to bring to the fact[-]finders [*sic*] attention that [] Jackson's testimony was not credible because he was convicted for a crime involving *crimen falsi*...." *Id.* at 38. However, as the Commonwealth points out, defense counsel did cross-examine Jackson about that conviction, and his conviction for possession of narcotics. Namely, counsel elicited Jackson's acknowledgement that he had lied to police by providing them with a false name, and that Jackson had only received probation for his crimes, thus suggesting that Jackson's lenient sentence was in exchange for his testifying against Appellant. *See* N.T. Trial, 1/17/08, at 59, 175-76. Additionally, in closing arguments, defense counsel again attacked Jackson's credibility based on, *inter alia*, his prior convictions. *Id.* at 160. Appellant does not specify what more counsel should have done in questioning Jackson to highlight the credibility issue regarding Jackson's *crimen falsi* conviction. He also does not elaborate on

his assertion that further questioning by counsel "could have been the gateway into all issues of credibility…." *Id.*

Finally, Appellant contends that trial counsel acted ineffectively by not requesting a cautionary jury instruction regarding Jackson's credibility in light of his false identification conviction. Appellant does not specify what instruction counsel should have requested; instead, he simply avers that "[w]hen a prior conviction is admitted to impeach a witness, the party against whom it is offered is entitled to have the jury instructed that the conviction may be considered only for impeachment purposes." Appellant's Brief at 37.

Our review of the record, however, demonstrates that the court did provide this type of instruction regarding Jackson's testimony. Namely, the court stated:

> [The Court:] You have also heard the evidence that one of the witnesses, [] Jackson, has been convicted of the crime of falsifying identification to law enforcement. The only purpose for which you may consider this evidence of a prior conviction is in deciding whether or not to believe all or part of his testimony. In doing so, you may consider the type of crime committed, how long ago it was committed, and how it may have affected the likelihood that [] Jackson has testified truthfully in this case.

N.T. Trial, 1/23/08, at 106-07. Furthermore, the court also instructed the jury that Jackson had been given a "grant of immunity[,]" meaning that his "testimony was given in exchange for a promise by the Government that [] Jackson would not be prosecuted for his testimony…." *Id.* at 107. The court explained that, because of the grant of immunity, the jury should "consider

- 12 -

[Jackson's] testimony with greater caution than the other witnesses." ***Id.*** In view of this record, Appellant has not demonstrated that he was prejudiced by trial counsel's failure to request some additional, unspecified cautionary instruction pertaining to Jackson's testimony. Therefore, Appellant's fourth claim of trial counsel's ineffectiveness fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2017